## GREEN et al. v. WILSON et al.

No. 14491—Opinion Filed Oct. 13, 1925.

1. **Bastards—Legitimacy — Capacity to Inherit as Incident.**

Legitimacy is a status or social condition, and capacity to inherit is only one of its incidents.

2. **Same—Effect of Legitimation.**

Legitimation, as a matter of law equalizes children born out of wedlock with legitimate children.

3. **Indians—Creek Statute as One of Descent and not of Legitimation.**

Section 258 of the Creek Statutes, as codified by A. P. McKellop, which provides that, "if any person claims to be the child of a deceased male person, and it should be proven that such person did not, during life, recognize the claimant as his offspring, then such claimant shall not be entitled to any share in the estate of the deceased", is a statute of descent, and not of legitimation.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by James Green against O. H. Wilson and the Illinois Life Insurance Company, Ralph Perryman, intervener. Judgment for defendants, and plaintiff and intervener appeal. Affirmed.

Herbert E. Smith and Charles Whitaker, for plaintiff in error Green.

Lafayette Walker, for plaintiff in error Perryman.

A. J. Ward, Creek National Atty., amicus curiae.

Leslie Rogers, Green & Green, and Turner, Turner, Harley & Parris, for defendants in error.

Opinion by RAY, C. The land involved was the allotment of Barney Green, a full-blood Creek Indian, who died in McIntosh county in 1908. The evidence sustains the finding of the trial court that James Green, plaintiff below, plaintiff in error, and Fred Green were illegitimate sons of Barney Green and were recognized by him in his lifetime as his offspring while the Creek laws were in force.

The single question for decision is, Did the recognition of James Green and Fred Green by Barney Green, as his offspring, which would have entitled them to inherit from him under section 258 of the Creek Statutes if descent had been cast while the Creek laws were in force, entitle them to inherit from him under the laws of this state? Section 258 of the Creek Statutes referred to reads as follows:

"If any person claim to be the child of a deceased male person, and it should be proven that such person did not, during life, recognize the claimant as his offspring, then such claimant shall not be entitled to any share in the estate of the deceased."

Stated differently, the question for decision is, Was section 258 of the Creek Statutes enacted as a legitimating statute or as a statute of descent?

The identical question was decided by this court in the case of Jameson v. Jameson, 111 Okla. 82, 238 Pac. 426. The decision in that case was adverse to the contention of the plaintiff in error and is adopted as the opinion in this case.

Certain arguments are made here, however, which were not considered in the Jameson Case. The probate attorney in his brief, amicus curiae, filed by leave of court, says, in substance, as we understand it, that the district courts of this state within the boundaries of the old Creek Nation have decided numerous cases, not appealed to this court, in which the right of inheritance of children so recognized was upheld, and "such decisions were approved because they fitted in with such facts relating to Indian children as were generally known and recognized by the courts within the old boundary of the Creek Nation; while in the county courts numerous deeds were approved from such recognized father". It is further stated that these decisions have been followed by the Indian Department in the distribution of Indian estates. No particular case is called to our attention. It is further said by the probate attorney that many were born in the Creek Nation which we would illegitimate, but were not so recognized by the Creek Nation, and "such words as legitimate or illegitimate or their equivalent were unknown in their language, nor was there any different social or legal status made among the Creeks as to children born under any of their Creek custom marriages."

As to the interpretation the Indian Department may have placed upon the laws and customs of the Creek Nation, we are not advised. No particular rule or decision of that department of the federal government has been called to our attention. And we are not here called upon to decide this case upon the practices and customs of

the Creek Tribe of Indians. We are called upon to apply the laws of descent of this state to the facts of this particular case and, in so doing, it becomes necessary, as in the Jameson Case, to construe the Creek statute above quoted. That statute was pleaded by the defendant as the law of the Creek Nation, and at the trial it was stipulated as follows:

"It is further agreed that the laws of the Creek Nation as published in McKellop's Constitution are laws of the Creek Nation and may be considered in evidence without further proof as to what such law is or was."

Some evidence was offered by the testimony of one witness tending to show the customs of the Creek Tribe as recognizing the right of all children to inherit alike without regard to legitimacy. But the evidence shows that James and Fred Green were born subsequent to the adoption of section 258, which we think was a statute of descent and not of legitimation. The argument of the probate attorney, if we understand it, is that because the Creeks recognized no distinction between legitimate and illegitimate children, the laws of descent of this state should be construed one way when dealing with full-blood Creek Indians, and another way when other citizens of the state are involved. If, as contended, the Creek Indians had no conception of a distinction between legitimate and illegitimate children, then it is conclusive that section 258 was not enacted as a legitimating statute. It is not conceivable that they enacted a law to remove a distinction which they knew not of.

Under our laws of descent and distribution, the estate of a deceased intestate is inherited by the surviving spouse and the legitimate children, if there be such survivors, as provided in section 11301, C. S. 1921. If there be an adopted child surviving, it inherits as if born in wedlock except it does not take property expressly limited to the body or bodies of the parents by adoption or property from the lineal or collateral kindred of such parents by right of representation as provided in section 8057. If there be a surviving child of the deceased father born out of wedlock of a woman other than his wife, but it has been publicly acknowledged by the father as his own and been received into the home with the consent of the wife and been treated by the father as a legitimate child, it inherits as an adopted child. If there be surviving an illegitimate child and the deceased has acknowledged himself in writing, signed in the presence of a competent witness, to be the father of such il-

legitimate child, it inherits its father's estate as if born in lawful wedlock, "but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral." If there be surviving a child of the deceased father and his wife born as an illegitimate child before marriage, but it has been acknowledged by the father as his child after the marriage, or adopted by him into his family, such child is legitimated, that is, equalized with the children born in wedlock, both as to social status and right of inheritance, and inherits with and as the legitimate children. In no other way can an illegitimate child be legitimated under the laws of this state.

If the status of James Green and Fred Green had been fixed as legitimate children of the deceased Barney Green during his lifetime by being legitimated under the laws of the Creek Nation, of which they were residents and citizens, that status would no doubt continue and entitle them to inherit as legitimate children, as the law under which descent was cast permits legitimated children to inherit as legitimate, but as they were not legitimated, or adopted, or recognized by Barney Green as his children in any manner provided by the laws of this state, they did not inherit any part of his estate.

It is contended that as James and Fred Green were recognized by Barney Green as his offspring while the Creek laws were in force, the right of inheritance is guaranteed to them by the proviso to section 1 of the Enabling Act and section 1 of the schedule to the Constitution. The proviso contained in the Enabling Act reads:

"Provided, that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this act had never been passed."

Section 1 of the schedule provides:

"No existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the form of government, but all shall continue as if no change in the forms of government had taken place. * * *"

It is clear from the language of section

1 of the schedule that the purpose was to protect all existing rights in the process of changing the forms of government, but it was not the purpose to limit the power of the state to enact substantive laws affecting all the people of the state.

As to the proviso of the Enabling Act, the argument would be conclusive if descent had been cast while the Creek laws were in force, or if section 258 of the Creek Statutes had been enacted as a legitimating statute as contended; but neither is the case. We think the contention is without merit.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 36 C. J. p. 988. (2) 7 C. J. p. 953, § 26. (3) 31 C. J. p. 524, § 97 (Anno). See under (1, 2) anno. 23 L. R. A. 753; 3 R. C. L. p. 739; 1 R. C. L. Supp. 886; 5 R. C. L. Supp. p. 199.