Plaintiffs in error appeal to this court from the judgment of the district court of Wagoner county, Okla., appointing W.H. Rust as administrator of the estate of Billie Atkins, deceased, — the said W.H. Rust having theretofore been appointed guardian of the person and estate of Nellie Atkins, Ed Atkins, and Legus Atkins.
Parties will be referred to as plaintiffs and defendants in this action, they having appeared as such in the trial court.
Billie Atkins, an elderly full-blood Creek Indian man, married Bertie Miller, a negro woman on July 31, 1920. They secured a license from the court clerk of Tulsa county, Okla., and the marriage was duly solemnized in said county, and thereafter they lived together as husband and wife upon the allotment of Billie Atkins. Three children were born as a result of this union, to wit, Nellie Atkins, Ed Atkins, and Legus Atkins. Bertie Miller died in 1928.
After the death of Bertie Miller, Billie Atkins continued to live upon his allotment with his three children until his death, and following his death the three minor children continued to occupy said homestead as their residence. Billie Atkins died on April 24, 1929, in Wagoner county, Okla., and application was made to the county court of Wagoner county, for letters of administration upon his estate.
Richard Atkins, a half-brother of Billie Atkins, deceased, filed his petition in the county court requesting the appointment of S.W. Brown, Jr., as administrator of the estate of Billie Atkins, deceased. Mitchell Wadsworth, nephew of Billie Atkins, deceased, petitioned for the appointment of W.S. Vernon as administrator of the estate of Billie Atkins, deceased. W.H. Rust, as guardian of Nellie Atkins, Ed Atkins, and Legus Atkins, minors, filed his petition for the appointment of himself as such administrator and objected to the other applicants on the grounds that he, as guardian of the minor children, had prior right to the appointment.
The cause was heard by the county court of Wagoner county, Okla., and judgment was rendered in favor of W.H. Rust, guardian, appointing him administrator of the estate of Billie Atkins, deceased, with bond in the amount of $35,000, and against the plaintiffs.
Plaintiffs appealed to the district court of Wagoner county, Okla., where said cause was tried de novo, and the district court found in favor of defendants, and rendered its order affirming the order and judgment of the county court of Wagoner county, Okla., from which order and judgment of the district court plaintiffs appeal to this court.
The sole question to be decided in this appeal is, Who has the prior right to appointment as administrator, and in deciding this question we have to determine whether the three children, born as a result of the attempted marriage of Billie Atkins and Bertie Miller, inherit the estate of Billie Atkins, deceased, or whether said estate goes to his half-brothers and half-sisters and their descendants. Plaintiffs contend that since the attempted marriage between Billie Atkins and Bertie Miller was prohibited by law, then there could be no legal marriage between said parties, and that their cohabiting together and bringing into the world the three children just named would not entitle said children to inherit from their father, Billie Atkins; Billie Atkins having died without issue of his own body, his property would descend to his half-brothers and half-sisters.
The trial judge, who was very familiar with the circumstances surrounding this case, found that the attempted marriage was in good faith, and that under section 11303, C. O. S. 1921, children born to said parties were legitimate and would inherit their father's estate.
The exact question presented in this appeal has never been passed on by our court, as to the rights arising out of a marriage between an Indian and a negro, but the section of our statute under which the same *Page 296 
comes has been construed by this court in cases similar to the instant case.
Section 11303, C. O. S. 1921, is a section of succession or descent of property. Said section provides procedure whereby illegitimate children may be acknowledged so as to inherit the estate of their father. The last part of section 11303, C. O. S. 1921, provides:
"* * * The issue of all marriages null in law, or dissolved by divorce, are legitimate."
This court said in the second paragraph of the syllabus, in the case of Copeland v. Copeland, 73 Okla. 252, 175 P. 764:
"Under section 8420, Revised Laws of 1910, which provides: 'The issue of all marriages null in law, or dissolved by divorce, are legitimate, — a child born of a marriage contracted and consummated in accordance with the form of the law, which for any reason (such as one of the parties having a living spouse undivorced) is invalid, is legitimate, and inherits and transmits by descent as though born in lawful wedlock."
And in the body of the opinion, the court discusses this question in detail, and we quote the following from the body of said opinion:
"We have considered all of the evidence carefully, and believe that it amply sustains the contention of the plaintiffs that no divorce had been granted, and hold that the second marriage was void for the reason that at the time said marriage was entered into, Joe Copeland had a living wife, and no divorce had been decreed. This raises the question as to the status of the child born, Elizabeth Copeland, of the second marriage. Revised Laws of 1910, sec. 8420, provides:
" 'The issue of all marriages null in law, or dissolved by divorce, are legitimate.'
"This provision of this statute has never been construed by the Supreme Court, its language seems too plain for construction, and, if it means what it says, a child born of a marriage contracted and consummated in accordance with the law, though void on account of the disability of one of the parties, such as having a living spouse undivorced, is legitimate, and, being legitimate, as a natural sequence it would inherit from its parents as though it were born in lawful wedlock. This statute, however, or statutes identically the same, have been construed by the Supreme Courts of California, Missouri, and Wisconsin. The Supreme Court of California held, under this provision of the statute, in the case of Graham v. Bennet,2 Cal. 503, that children of a void marriage were legitimate and the heirs of their parents. The Supreme Court of Wisconsin, Watts v. Owens, 62 Wis. 512, 22 N.W. 720, held under a similar statute:
" 'A child born within the wedlock of a regular marriage which for any reason (as that the woman had another husband living) is null in law is nevertheless the legitimate child and heir of both parents.'
"The Missouri Supreme Court, in the case of Dyer v. Brannock, 66 Mo. 391, 27 Am. Rep. 359, held under statute identical with ours:
" 'Under section 8, p. 328, Rev. Stat. 1825, which provides that the issue of all marriages deemed null in law * * * shall nevertheless be legitimate, a child of such a marriage will inherit and transmit by descent the same as if born of a lawful marriage.'
"Under this statute, and the decisions construing similar provisions, it is very evident that Elizabeth Copeland is the legitimate child and the heir of Joe Copeland and Martha Copeland, and inherits and transmits by descent property the same as if she had been born of lawful wedlock. * * *"
This case was followed in the case of Brokeshoulder v. Brokeshoulder, 84 Okla. 250, 204 P. 284.
This court next passed upon and interpreted said section of law in the case of Page v. Roddie, 92 Okla. 236, 218 P. 1092, wherein it added the element of good faith in construing said section. In the body of the opinion, the court said:
"The statute applies where the parties, in good faith, attempt to contract the marriage relation, against which some legal barrior exists, and not to a relation immorally entered into."
In the recent case of Sisney v. Sisney, 132 Okla. 90,269 P. 349, in an opinion written by one of the honored members of this court, construing that clause of section 11303, C. O. S. 1921, under consideration, the court said in the syllabus of said case:
"Under section 11303, C. O. S. 1921, which provides that 'the issue of all marriages null in law, or dissolved by divorce, are legitimate,' a child begotten before, but born after, marriage, is legitimate, though the marriage was void because the husband had a living wife at the time of the marriage"
— and in the body of the opinion, the court commented upon said section as follows:
"At common law and under our statutes, where a question of legitimacy arises, the presumption is in favor of the legitimacy of a person born in wedlock. Section 8022, C. O. S. 1921, provides that all children born in wedlock are presumed to be legitimate. Assuming that the plaintiff had never been married and was capable of contracting a marriage at the time he married defendant, the child would be presumed to be legitimate. He, however, could not lawfully contract a marriage because he had a living *Page 297 
wife. When the Legislature said, 'The issue of all marriages null in law, or dissolved by divorce, are legitimate,' we think it intended to make the issue of such void marriages legitimate to the came extent and in the same manner they would have been had the attempted marriage not been void.
"In the instant case, if the marriage had been valid, the child would be presumed to be legitimate, although it was begotten before the marriage. Since the mother was capable of contracting the marriage relation, and since she in good faith believed the father was capable of contracting the marriage relation, and, acting upon this belief, a marriage ceremony was performed, and the plaintiff and defendant lived together as husband and wife until some two or three months after the child was born, under section 11303, supra, the child is legitimate. * * *"
In the Copeland Case, the court said that that portion of section 11303 under consideration had never been construed by this court, but its language seems too plain for construction, and, if it means what it says, a child born of a marriage contracted and consummated in accordance with the law, though void on account of the disability of one of the parties, such as having a living spouse, is legitimate, and being legitimate, as a natural consequence, it would inherit from its parents as though it had been born in lawful wedlock.
In the Page Case cited, the court added a new element of good faith, stating that the statute applies where the parties in good faith attempt to contract the marriage relation, against which some legal barrier exists. In the case at bar the trial court found that Billie Atkins and Bertie Miller attempted their marriage in good faith, which would bring the case at bar within the requirements of the rule as enunciated in the Page Case.
In the Sisney Case, the court held that even though the marriage was absolutely void, the issue is legitimate and would inherit just the same as though the attempted marriage had been valid.
Plaintiffs urge strenuously that the issue of Billie Atkins and Bertie Miller could not be legitimate under any circumstances so as to inherit, because the marriage of these two persons was prohibited by law, — and that they, in attempting to consummate said marriage, committed a crime.
In the Sisney Case, the father had a living wife from whom he had not been divorced at the time of entering into his second marriage, which placed him in the position of having two living wives at the same time without having a divorce from either of them. This, under our law, would make him a bigamist, and the crime of bigamy is a felony. Yet, under such circumstances, this court held that children born of the second attempted marriage were legitimate under our statute, and that they inherited property from their bigamist father. This holding of the court disposes of the contention of plaintiffs.
Billie Atkins was an elderly Creek Indian who, in good faith, attempted to enter into the marriage relation with Bertie Miller. They brought into the world the three minor children who are parties to this suit.
He supported the children and their mother up to the date of the mother's death, and after her death he nurtured and supported his children as a father should. To him they were his children. There existed in his bosom a love for his children just as any father should have. In the mind of this simple red man, these children were his children.
The trial court found that Billie Atkins entered into the attempted marriage in absolute good faith, and that said offspring were brought into this world in good faith.
In accordance with the above authorities cited, we hold that the offspring of Billie Atkins and Bertie Miller be and are the legitimate offspring of Billie Atkins, deceased, and as such, their guardian and representative is entitled to prior right in the appointment as administrator of said deceased; that the judgment of the district court of Wagoner county, Okla., affirming the judgment of the county court of Wagoner county, Okla., appointing W.H. Rust administrator of the estate of Billie Atkins, deceased, be, and the same is, hereby affirmed.
HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., concurs in the conclusion. McNEILL, J., disqualified. CLARK, V. C. J., and RILEY, J., dissent.